850 P.2d 193

**ASHLEY GLASS CO., INC.,**
**Plaintiff–Appellant,**

v.

**Larry Hoff, Moore Financial Services Incorporated, Defendants,**

**and**

**Walter H. BITHELL and Sherry B. Bithell, husband and wife, and the Idaho First National Bank, N.A., Defendants–Respondents.**

**Walter H. BITHELL and Sherry B. Bithell, husband and wife, Cross Claimants–Third Party Plaintiffs,**

v.

**Larry Hoff, Cross–Defendant,**

**and**

**Larry A. HOFF and Annette Hoff, husband and wife; and R. Dean Hoff and Maria R. Hoff, husband and wife, Third–Party Defendants.**

**No. 18865.**

Supreme Court of Idaho,
Boise, December 1991 Term.

April 26, 1993.

Frank W. Stoppello, Boise, for plaintiff-appellant.

Coffin, Snyder & Matthews, Boise, for defendants-respondents. William R. Snyder, argued.

THE PREVIOUS OPINION ISSUED FEBRUARY 19, 1993, IS HEREBY WITHDRAWN AND THIS OPINION IS SUBSTITUTED THEREFOR.

McDEVITT, Chief Justice.

## BACKGROUND

The complaint in this action was filed by Ashley Glass Co., Inc. (Ashley Glass), naming as defendants: Larry A. Hoff; Moore Financial Services, Inc.; Walter H. Bithell and Sherry B. Bithell, husband and wife; and the Idaho First National Bank, N.A. Precipitating the action was the unpaid account of Larry Hoff in the sum of $4,629.41, for materials furnished by Ashley Glass and used by the Hoffs in the construction of a residential building. Prior to initiating legal action, a notice of claim of lien, duly executed and verified, was filed with the Ada County Recorder's Office on September 27, 1988, at 1:07 p.m., by Ron Ashley, corporation president of Ashley Glass. Other events later taking place on that same day include the recordation of a warranty deed which involved the identical real property described in the claim of lien notice. This instrument, executed by all of the involved Hoffs, was duly acknowledged and bears the stamped filing date and time of September 27, 1988, at 3:00 p.m. The warranty deed transferred the ownership of the Hoff real property to Walter H. Bithell and Sherry B. Bithell, who were thereafter also named as defendants in the action initiated by Ashley Glass. Almost a month prior thereto, specifically on August 25, 1988, the Bithells had signed an offer to purchase the Hoff property for a stated amount, and the Hoffs agreed to the sale at the price and on the terms stated.

Exhibit "C" in the trial record identifies ten claims of lien filed against the Hoff real property. Signed by both of the Bithells and all of the Hoffs, it states the amounts of each of the claimed liens, and that such will be paid at closing and lien releases obtained. There is no issue whatsoever regarding those liens.

Dean Hoff's affidavit states that he obtained knowledge of the Ashley Glass claim of lien only by reason of being so informed by a title company representative in a telephone call to that effect on the morning of September 28, 1988.

The affidavit of Sherry B. Bithell contains her statement that neither she nor her husband were served with a copy of the claim of lien within twenty-four hours of its filing, nor thereafter until served with a summons and complaint.

## DISCUSSION OF RECENT LEGISLATIVE HISTORY RE: STATUTORY LIEN PROCEDURE

In 1983, the legislature amended I.C. § 45–507, formerly I.C.A. § 44–507. Before that it was C.S. § 7346, before that it was § 5115, R.C. & C.L., and before that it was § 1899, p. 147, ch. 1, § 6.[1]

---

1. For all of those years, the pre–1983 statute was this:

    **45–507. Claim of lien.**—Every original contractor, professional engineer or licensed surveyor claiming the benefit of this chapter must, within ninety (90) days, and every other person must, within sixty (60) days, after the completion of any building, improvement or structure, or after the completion of the alteration or repair thereof, or in case he ceases to labor or perform professional services thereon before the completion thereof, then after he so ceases to labor or to perform professional services thereon for any cause, or after he has ceased to furnish materials therefor, or after the performance of any labor or professional services in a mine or mining claim, file for record with the county recorder for the county in which such property or some part thereof is situated, a claim containing a statement of his demand, after deducting all just credits and offsets, with the name of the owner, or reputed owner, if known, and also the name of the person by whom he was employed or to whom he furnished the materials, and also a description of the property to be charged with the lien, sufficient for identification, which claim must be verified by the oath of the claimant, his agent or attorney, to

The 1983 amendment added to the statute these two sentences:

A true and correct copy of the claim of lien shall be served on the owner or reputed owner of the property either by delivering a copy thereof to the owner or reputed owner personally or by mailing a copy thereof by certified mail to the owner or reputed owner at his last known address. Such delivery or mailing *shall* be made no later than twenty-four (24) hours following the filing of said claim of lien.

(Emphasis added.)

The legislature's amending language raises the issue before us. The defendants contend that the language, "shall be served on the owner or reputed owner" is mandatory, and that the failure to follow the statute as amended invalidates the claim of lien.

The trial court in ruling for the defendants concluded that I.C. § 45–407 required "[t]he service of a true and correct copy of a claim of lien must be completed within twenty-four (24) hours of the filing of the lien."

Thus, the trial court ruled that I.C. § 45–407, as amended, unequivocally required of Ashley Glass that it serve a true and correct copy of its claim of lien upon the Hoffs within twenty-four hours of the filing of the lien.

The trial court further ruled on Ashley Glass' contention that it, the non-moving party who was resisting the summary judgment proceeding instituted by defendants, was entitled to the benefit of having substantially complied with the requirements of I.C. § 45–407 as amended in 1983. The court held:

The Court finds that Idaho Code Section 45–507 requires every lien claimant to serve a true and correct copy of the claim of lien on the owner or reputed owner by personally delivering a true and correct copy to the owner or reputed owner, or by mailing a true and correct copy of the claim of lien by certified mail to the owner or reputed owner. The

the effect that the affiant believes the same to

service of a true and correct copy of a claim of lien must be completed within twenty-four (24) hours of the filing of the lien. The facts are undisputed in this regard. The Plaintiff did not make service of a true and correct copy of the claim of lien upon the owner or reputed owner by either means.

The *Plaintiff claims* that it orally advised one (R. Dean Hoff) of the four prior owners that a lien had been filed in a conversation initiated by R. Dean Hoff. The *Plaintiff further claims* it also orally advised a closing agent, Pam Graham, (in the Hoff to Bithell closing) that a lien had been filed. The Plaintiff therefore argues that this oral notification is sufficient notice or that it is substantial compliance with the intent of the statute. However, the statute mandates delivery of a true and correct *copy* of the claim of lien itself, and thereby precludes oral notice that a lien was filed. The Court finds that the claimed oral advice of lien given to R. Dean Hoff and to Pam Graham was not a sufficient compliance with Idaho Code Section 45–507.

THEREFORE, IT IS THE ORDER OF THIS COURT That the claim is invalid under the requirements of Idaho Code Section 45–507 and that the Defendants' Motion must be granted as a matter of law as to the Plaintiff's claim against the Defendants Bithell and Idaho First National Bank.

(Emphasis added.)

The trial court found and the record is clear that there was no issue of fact as to the failure of Ashley Glass (the lien claimant) to serve, within twenty-four (24) hours, a copy of the lien on the "owner or reputed owner" of the real property on which it sought to impose a lien.

This Court, in *Western Loan & Bldg. Co. v. Gem State Lumber Co.*, 32 Idaho 497, 501, 185 P. 554, 555 (1919), in interpreting the mechanic's lien statute held:

The limitation prescribed by statute of the time within which an action must be brought in a proper court for the foreclosure of a mechanic's lien is not the

be just.

ordinary statute of limitation which is waived if not pleaded. "The time within which a suit must be brought operates as a limitation of the liability itself as created, and not of the remedy alone. It is a condition attached to the right to sue at all." (*Harrisburg v. Richards*, 119 U.S. 199, 7 Sup.Ct. 140, 30 L.Ed. 358. *See also, Continental Bank v. Pacific Coast Pipe Co.* [222 F. 781 (1915)] *supra*.) *See also Platte v. Pacific Fed. Savs.*, 62 Idaho 340, 111 P.2d 1093 (1941).

The above rationale applies to the condition imposed by the 1983 amendment to I.C. § 45–507. To be effective, a copy of the mechanic's or materialman's lien must be served on the "owner or reputed owner" within twenty-four hours of its being filed. This is a statutory condition for an effective lien.

The trial court's decision is affirmed.

Costs on appeal to respondent. No attorney fees awarded on appeal.

BAKES, C.J., and JOHNSON, JJ., concur.

BOYLE, J., sat, but did not participate in this opinion due to his resignation on March 31, 1992.

BISTLINE, Justice, dissenting.

This is a case where the legislature believed itself to be enacting legislation which would improve I.C. § 45–507, which is and has been since enacted in 1983, a protection to Idaho materialmen and mechanics relative to their entitlement to be compensated for services past rendered, and materials past furnished.

The 1983 legislature in its wisdom was brought to the conclusion that I.C. § 45–507 would better serve those who by law come under the beneficent protection of the lien law by amending I.C. § 45–507 to add thereto an additional provision, namely that any person or entity seeking to protect his rightful claim to be paid, in addition to filing his claim of lien with the county recorder of the county in which he labored or furnished materials and supplies, should

*provide the owner or reputed owner of the property being charged with a copy of the lien which had been filed.* This change in the statute was long overdue; it could serve the salutary purpose of establishing communication between an unpaid laborer or supplier and the party who benefitted therefrom.

Unfortunately, the legislature's attempt at working a change in the lien law procedure went awry, as is best observed by a review of the amending procedure, which is readily available in the overall picture disclosed by the documented legislative minutes.[2] The legislature's Statement of Purpose regarding the amendment which it proposed discloses that the legislative intent was not to benefit the materialman, mechanic, or laborer, but rather the person who owned the property against which the lien was filed, as illustrated by the third and final sentence in the Statement of Purpose:

[I]f a materialman's or mechanic's lien is filed against a person's property, the owner or reputed owner must be notified either by personal service or certified mail. Current statutes require only that the claim of lien be filed at the courthouse. If a person knows that a mechanic's or materialman's lien has been filed against his property, often he will be able to avoid 'double jeopardy' for the cost of the services or goods provided by the mechanic or materialman.

Bluntly stated, that sentence is meaningless insofar as concerns avoiding "double jeopardy" for payment of services or goods provided by the lien-claiming mechanic or materialman. Taking the statute as it reads, even after the 1983 amendment became effective, once a properly drawn lien was compiled and filed for record there was no way for an owner to avoid payment for the just and provable bills of a materialman or mechanic, which if not paid, would remain as a lien against the owner's property until any dispute would be resolved in court, or otherwise settled by agreement of the involved parties. The statement of pur-

2. Attached hereto as Appendix "A."

**548**

pose was undoubtedly well intended, but certainly not well founded. In all likelihood it may have misled many of the individual senators and representatives.

What the legislature apparently had in mind was the enactment of a bill which would amend I.C. § 45–507 and bring that statute into line with what a number of other states had already done, namely fashioning a statutory requirement that as a condition precedent to filing a materialman's or mechanic's lien, the party intending to file a lien must first notify his alleged debtor, and owner of the improved property, of his intention to file a lien. The giving of such notice would well serve the involved parties in that it might often result in payment in full or in part, but better yet could cement a good relationship between debtor and creditor, which would be to the benefit of both, and much preferred to costly litigation. Nothing ventured in that regard, nothing gained.

All of the foregoing leads to the important issue here at stake, an issue not addressed in the briefs of the parties, nor addressed in oral argument, nor as of this writing by any other member of the Court, to wit:

> Was the 1983 Act amending I.C. § 45–507 enacted within the framework of the Idaho Constitution?

Clearly it was not. The 1983 act must be invalidated because it was void at its inception. That ruling is mandated by the Idaho Constitution, art. 3, § 16, which requires unity of subject and title.

Art. 3, § 16 of the Idaho Constitution reads:

> **Unity of subject and title.** Every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title; but if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be embraced in the title.

The language of *the title to the act* in question is this:

AN ACT

RELATING TO MECHANICS' AND MATERIALMAN'S LIENS; AMENDING SECTION 45–507, IDAHO CODE, TO PROVIDE THAT NOTICE MUST BE GIVEN TO THE OWNER OR REPUTED OWNER OF REAL PROPERTY *WHICH IS TO BE CHARGED* WITH A MECHANIC'S OR MATERIALMAN'S LIEN.

The *body of the act* speaks to the requirement of delivering a true and correct copy of the lien which has been filed by certified mail to the owner or reputed owner within twenty-four (24) hours of the filing. That language is not embraced in the title. That language *should have been* embraced in the title; otherwise, there is not present the requisite unity of subject and title. Idaho Const. art. 3, § 16.

Moreover, the particular language is mistakenly pointed at a lien claim *which is to be charged*, which would have to do *not* with giving notice *after* a lien has been filed, but rather where the procedure being used is the serving, filing, giving, or whatever, of *notice of intent to file a lien.* In order for the 1983 act amendment to be held effective, and what was undoubtedly in mind, was it should have been written not in terms of real property which is to be charged, but rather:

> NOTICE MUST BE GIVEN TO THE OWNER/REPUTED OWNER OF REAL PROPERTY WHICH *HAS HAD* A LIEN PLACED AGAINST IT.

That past tense language was not used, and the act as passed is meaningless.

Do we comprise an adroit or alert state supreme court, one geared to the responsibilities as guardians of the sanctity of our own constitution, where we indulge the legislature's lack of regard for art. 3, § 16 of our Idaho Constitution? We readily note that the legislature's intentions were of the best, the legislature simply followed the guidance of a non-legislator deputy attorney general who appears to have managed or sponsored the 1983 amendment, it being unimportant to know at whose suggestion.

## APPENDIX A

The minutes of the Senate Judiciary and Rules Committee meeting of February 18, 1983, document the following proceedings which are relevant to the enactment of the 1983 amendment to I.C. § 45–507:

R.S. 8994 Mechanics and Materialmen's liens, clarifications. To require that a property owner must be notified when a lien is placed against his property. Moved by Senator Marley, second by Senator Barker, to introduce R.S. 8994. On a voice vote, the motion passed.

The minutes of the Senate Judiciary and Rules Committee of February 23, 1983, document the following proceeding relevant to the enactment of the 1983 amendment to I.C. § 45–507:

S 1125 Relating to mechanics and materialmen's lien. Ken McClure, Deputy Attorney General's office stated that this legislature adds one more thing that the lien maker must do to have a valid lien, that he must notify the property owner that the lien has been executed. Moved by Senator Floyd, second by Senator Sweeney to the floor with a DO PASS recommendation. On a voice vote, the motion passed. Senator Sweeney floor sponsor.

The Senate Journal, dated February 28, 1983, p. 106, documents the following proceeding:

S 1125 was read the third time at length, section by section, and placed before the Senate for final consideration, the question being, 'Shall the bill pass?' Roll call resulted as follows: Ayes: 33; Nays: 1; Absent and excused 1; total 35.

Whereupon the president pro tempore declared S 1125 passed, title was approved and the bill ordered transmitted to the House.

The House Journal of March 28, 1983, documents the following proceedings:

S 1125 was read the third time at length, section by section, and placed before the house for consideration, the question being, 'Shall S 1125 pass?' Roll call resulted as follows: Ayes: 69; Nays: none; Absent and excused: 1; total 70.

Whereupon the speaker pro tem declared S 1125 passed the House. Title was approved and the bill ordered returned to the Senate.